UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| STEPHANIE R. TROUPE, | ) | |
| --- | --- | --- |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 759 DDN |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before this court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Stephanie R. Troupe is not disabled and, thus, not entitled to either disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., or supplemental security income (SSI) under Title XVI, 42 U.S.C. §§ 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born in 1961 and protectively filed applications for DIB and SSI on July 28, 2015. (Tr. 13, 289-97, 317-20). She alleged a disability onset date of July 8, 2015, due to chronic back pain following spinal fusion surgery, nerve compression causing pain and numbness in foot, poor balance leading to lots of falls, high blood

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted in her official capacity for Carolyn W. Colvin as the defendant in this suit. 42 U.S.C. § 405(g) (last sentence).

pressure, coronary artery disease, and chest pain. (Tr. 317-22). Her applications were denied in November 2015, and she requested a hearing before an ALJ. (Tr. 219-24, 232). At the February 2016 hearing, plaintiff and a vocational expert, J. Stephen Dolan, testified. (Tr. 156-80). By decision dated March 17, 2016, the ALJ concluded that plaintiff was not disabled under the Act through the date of the decision. (Tr. 10-28). The Appeals Council denied plaintiff's request for review. (Tr. 1-5). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

A. **Medical Record and Evidentiary Hearing**

The court adopts the parties' unopposed statements of facts (Docs. 15 and 20). These facts, taken together, present a fair and accurate summary of the relevant medical record and testimony at the evidentiary hearing. The court will discuss specific evidence as it is relevant to the parties' arguments.

B. **ALJ's Decision**

The ALJ noted that this was plaintiff's sixth disability benefits application and third ALJ hearing. (Tr. 21, 300). He noted that a prior disability benefits allowance was terminated after ten months in 2010, when plaintiff continued to earn income despite her alleged disability. (Tr. 21, 300). Following the termination of benefits, plaintiff earned more than $20,000 per year between 2011 and 2014 as a collections clerk. (Tr. 22, 163, 302). The ALJ determined that the record failed to support a deterioration in her condition since that time. (Tr. 10-24).

The ALJ found that plaintiff suffered from the severe impairments of degenerative disc disease, cardiomyopathy, diabetes mellitus with peripheral neuropathy, obesity, and hypertension. (Tr. 15). He found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 8, 2015. (Tr. 15). The ALJ concluded that plaintiff's impairments either alone or in combination did not meet or equal an impairment listed in the Commissioner's regulations. (Tr. 15-16).

The ALJ determined that plaintiff's impairments left her with the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can never climb ropes, ladders, scaffolds, or ramps and stairs, stoop, crouch, crawl, and kneel; she is unable to operate any foot controls; and she requires a sit/stand option every 60 minutes throughout the eight-hour workday while remaining on task; the claimant must avoid concentrated exposure to extreme cold, heat, and humidity; she must avoid concentrated exposure to irritants such as fumes, odors, dust, gases, or poorly ventilated areas; she is to avoid extreme vibration, all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery.

(Tr. 16). The ALJ noted that while plaintiff's impairments could reasonably be expected to cause some symptoms, he found plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were inconsistent with the assessed RFC. (Tr. 17).

Specifically, the ALJ noted the medical record revealed many normal findings, as well as many damaging inconsistencies. (Tr. 18). He found plaintiff's habit of smoking at least half a pack of cigarettes a day was inconsistent with the ongoing limitations she alleged. (Tr. 17, 21, 611, 651). He believed her non-compliance undermined the credibility of her allegations of disabling symptoms. *Id.* He noted several inconsistencies in plaintiff's reports to her primary care and reports to other doctors. (Tr. 21). Additionally, the ALJ noted that plaintiff reported great relief from pain and symptoms upon treatment. (Tr. 19, 22). The ALJ emphasized that plaintiff had been working, despite many of her ailments, for years. (Tr. 23). He ultimately concluded that nothing in the medical records suggested plaintiff could not perform sedentary work, as described in the assessed RFC, once she complied with treatment. (Tr. 18, 23) ("There is no persuasive evidence that [plaintiff's] recent circulatory problems and foot ulcers will not heal if [she] makes even a minimal effort to follow the instructions of her treating doctors."). (Tr. 23).

Based on his evaluation of the evidence, the ALJ found that the objective medical evidence and treatment records indicated plaintiff is capable of performing work as

described in the RFC. (Tr. 24). He found, further, that she is capable of her past relevant work as a collections clerk, relying on the testimony of a vocational expert (VE). *Id.* Accordingly, the ALJ concluded that plaintiff was disabled. *Id.*

## II. DISCUSSION

Plaintiff argues that the ALJ erred (a) in finding that plaintiff's impairments did not meet one of the Commissioner's listings: Listing 1.04A; (b) in the determination of her RFC; and (c) in the determination that plaintiff could perform her past relevant work. (Doc. 15). Plaintiff asks that this matter be remanded for further administrative proceedings.

### A. General Legal Principles

In reviewing the denial of Social Security disability benefits, the court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the court may not reverse it merely because there is substantial evidence in the record that would support a contrary outcome or because the court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to

determine whether an individual is disabled.  20 CFR § 404.1520(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her condition meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  In this case, plaintiff prevailed at Steps One and Two.  Because plaintiff did not prevail at Step Three, the Commissioner's analysis proceeded to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW).  *Id.* at § 404.1520(a)(4)(iv).  The claimant bears the burden of demonstrating she is no longer able to return to her PRW.  *Pate-Fires*, 564 F.3d at 942.  Plaintiff did not prevail at Step Four.  If the Commissioner had determined plaintiff cannot return to her PRW, the burden would have shifted to the Commissioner at to show that plaintiff had the RFC to perform other work that exists in significant numbers in the national economy.  *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).  In this case, the ALJ determined that plaintiff had the residual functional capacity to perform her prior relevant work.

B. **Substantial Evidence Supports the ALJ's Decision that Plaintiff's Impairments Do Not Meet Listing 1.04A**

Plaintiff argues the ALJ should have found that her impairments met Listing 1.04A.  Listing 1.04 covers disorders of the spine resulting in compromise of a nerve root or the spinal cord.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.  The specified criteria for Listing 1.04A are "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  *Id.* at § 1.04A.  Plaintiff must establish all of the listing's elements; if her impairment manifests only some of the elements, even with severity, but not all of them,

she has failed in her burden. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

If plaintiff fails to show the express elements of the listing, she may prevail if she shows that her impairment is "medically equivalent" to Listing 1.04A; she would prevail if her impairment is at least equal in severity and duration to Listing 1.04A. *Id.* Medical equivalence must be based on medical findings. 20 C.F.R. § 416.926(b). It is up to the ALJ to determine if medical equivalence has been shown. *Carlson v. Astrue*, 604 F.3d 589, 592 (8th Cir. 2010) (citations omitted).

Plaintiff claims that the medical evidence demonstrates she meets the listing for a spine disorder, because it shows she has degenerative disc disease requiring spinal surgery and the placement of a pain pump, disc herniation contacting the SI nerve roots, low back pain, an antalgic gait, severe restriction in her back's range of movement, impaired motor function because of severe low back pain, diminished deep tendon reflexes in knee and ankle jerks, and positive straight-leg raising tests both lying down (supine) and sitting. (Tr. 480, 483, 523, 540-44, 576-607, 612, 617, 621-25, 635-48, 662-707, 709).

The Commissioner argues that radiologist Hilton Price, M.D., determined that plaintiff's MRIs in 2010, before the alleged onset of her disability, and in 2015 were consistent with one another, indicating that her spinal condition over this period was stable. (Tr. 22, 704-05). The Commissioner also adverts to the fact that plaintiff worked while suffering from disc degeneration and herniation for several years, and notes that plaintiff has offered no explanation as to how her spinal condition became disabling in July 2015. (Tr. 18, 22, 302). Evidence plaintiff worked despite her impairments, plus the absence of evidence of any significant deterioration in her condition, indicate that her impairments are not disabling. *Goff v. Barnhart*, 421 F.3d 785, 792 (8th Cir. 2005).

Substantial evidence supports the ALJ's conclusion that plaintiff's impairments did not meet Listing 1.04A. First, the introduction to Listing 1.04A explains that:

> The musculoskeletal listings that include pain or other symptoms among their criteria also include criteria for limitations in functioning as a result of

the listed impairment, including limitations caused by pain. It is, therefore, important to evaluate the intensity and persistence of such pain in order to determine their impact on the individual's functioning under these listings.

List 1.04A at 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(d). The introduction also emphasizes that the treatment, severity, and duration of the impairment must be considered, as well as the response to treatment. *Id.* at §§1.00H and 1.00I. The ALJ concluded that plaintiff did not suffer from neuro-anatomic[2] distribution of disabling pain. (Tr. 16). In January 2015, plaintiff reported that her pain was greatly relieved with a pain pump trial. (Tr. 19, 583) ("Stephanie reports greater than 50 percent improvement in her overall pain as well as increased functional ability. In fact, she had been able to go upstairs pain-free, something that she had not been able to do for years."). (Tr. 583). While, plaintiff reported the side effects of nausea and vomiting with the pain pump trial, she elected to proceed with permanent installation and received additional treatment to mitigate these side effects. (*Id.*). Following installation of the pain pump, plaintiff continued to report substantial improvement, with some residual pain in the low back. (Tr. 587-92). Plaintiff's treating physician, Christopher Beuer, M.D., opined that, this residual pain notwithstanding, "she is doing quite well." (Tr. 587). Plaintiff began to report new hip pain in August 2015, but she was unable to describe the location of her pain. (Tr. 589-90, 663-64). She received a greater trochanteric bursa injection to treat this pain on October 26, 2015 (Tr. 624), but had failed to report any hip pain three days earlier, on October 23, 2015, during a comprehensive state disability examination. (Tr. 609-17). At that examination, she only reported lower back pain. (*Id.*)

Additionally, the introduction to Listing 1.04A explains that "functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B(2)(a). "Inability to ambulate effectively means an extreme limitation of the ability to walk." *Id.* at § 1.00B(2)(b)(1). The ALJ concluded that while plaintiff has an antalgic gait, she "is

---

[2] "Neuro-anatomic" means "the anatomy of the nervous system and nerve tissue." *McGraw-Hill Dictionary of Scientific and Technical Terms* (6th ed.), http://www.accessscience.com/ search?newSearch=Y&q=neuroanatomy.

clearly able to perform basic ambulation required for sedentary work as described in this finding." (Tr. 23). Plaintiff consistently denied motor weakness and her doctor instructed her to gradually increase her activity level. (Tr. 587-92, 663-64). Examining doctors found her to have normal muscle strength in her lower extremities, issuing her fours or fives on a scale of five. (Tr. 616-17). Plaintiff also had negative straight leg tests in December 2015. (Tr. 709).

For these reasons, substantial evidence supports the ALJ's decision that plaintiff's impairments did not meet each of the specified criteria for Listing 1.04A.

### C.  The ALJ Properly Formulated Plaintiff's RFC

Plaintiff also argues that the RFC determination and the determination that plaintiff could perform her PRW are not supported by substantial evidence. Specifically, she argues that the ALJ failed to properly weigh the evidence and failed to fully develop the record. Plaintiff asserts the ALJ mischaracterized the absence of a medical opinion on her work limitations as evidence that she had no work limitations. She also argues that the ALJ inferred too much from inconsistencies in plaintiff's reports to doctors: "[a]ny purported inconsistency in plaintiff's reports does not successfully refute the consultative examination results which indicated plaintiff had an observably antalgic gait, reduced range of motion, and positive straight leg raising testing." (Doc. 15 at 11-12; Tr. 610-17).

#### 1. The ALJ Properly Weighted the Evidence

The record supports the ALJ's weighting of the evidence. In determining a claimant's RFC, the ALJ must rely on some medical evidence of plaintiff's abilities, but need not rely on a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). In addition to medical evidence, the ALJ must consider all other relevant evidence, including an individual's own description of her limitations. *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013). Although it is ultimately the ALJ's responsibility to

formulate the RFC, the burden is on the claimant to establish her limitations. *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016).

In this case, the ALJ relied on treatment and examining records, objective medical evidence, consultative examination reports, plaintiff's statements to physicians, and plaintiff's disability application materials in determining plaintiff's RFC. (Tr. 16-24). First, the ALJ explained that plaintiff's treating physicians did not put any physical limitations on her; instead, they consistently "urged [her] to exercise, strengthen her legs, and perform activities that were wholly consistent with performing the sedentary residual functional capacity in this decision." (Tr. 23, 587-88, 590, 592, 679, 709). "In the absence of other evidence in the record, a physician's unrestricted recommendations to increase physical exercise are inconsistent with a claim of physical limitations." *Myers*, 721 F.3d at 527. Moreover, plaintiff reported to her treating physician in November 2015 that she had been more active and had lost weight by exercising. (Tr. 679-80). The ALJ took this as "an indication that the claimant is able to perform work functions within the established residual functional capacity." (Tr. 22, 679, 680)

Second, the ALJ noted that plaintiff was deconditioned and made only a small effort to improve her functioning. (Tr. 23). While there was evidence that plaintiff worked hard to lose some weight (Tr. 679), the ALJ observed that many of plaintiff's problems were directly related to her smoking habit, yet plaintiff continued to smoke at least half a pack a day against medical advice. (Tr. 17, 23, 401, 481, 486, 540, 679, 712, 717, 723-24, 728). *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006) (holding that an ALJ may properly consider a claimant's noncompliance with a treating physician's direction to quit smoking).

Third, the ALJ noted that plaintiff had worked for years with all of her alleged impairments. (Tr. 23-24). He noted that her spinal condition had not changed from 2010 to 2015. (Tr. 22). An imaging study performed by an examining physician in 2015 revealed that plaintiff's back condition was similar to, or "stable" with, its condition five years earlier, when plaintiff had been working. (Tr. 704-05). She also used a cane while working. (Tr. 173).

Plaintiff's testimony at the hearing about the side effects from her medication was inconsistent with her report to physicians during the course of treatment. At the hearing, plaintiff stated that the medication in her pain pump made her dizzy and drowsy, and she got caught sleeping at work. (Tr. 169, 173-74). She said she did not experience headaches, nausea, or any other side effects. (Tr. 174). But during the course of treatment, plaintiff first reported nausea and vomiting (Tr. 583-84), and then reported no side effects at all. (Tr. 587-91). Furthermore, and again contrary to her hearing testimony, the medical evidence demonstrates that when plaintiff received treatment, her symptoms significantly improved. (Tr. 171, 583-92) (putting her pain at a 9 or 10 at the hearing, versus reporting substantial improvement in pain during treatment). "An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

Finally, for all of plaintiff's emphasis on Dr. Bhattacharya's consultative examination, she does not explain how it supports limitations exceeding the significant limitations of the ALJ's RFC determination. Dr. Bhattacharya opined that plaintiff had a mildly antalgic gait, reduced range of motion, and positive straight leg raise testing. (Tr. 612-17). Less than two months after Dr. Bhattacharya's examination, plaintiff had negative straight leg raise testing. (Tr. 709). This inconsistency notwithstanding, and as the ALJ explained, plaintiff has not demonstrated that limiting her to a significantly reduced range of sedentary work – as expressed in the RFC – does not address Dr. Bhattacharya's observations. (Tr. 16). Plaintiff has not shown that more severe limitations are required, and she bears this burden at Step Four. Substantial evidence supports the weight the ALJ assigned to the evidence.

### 2. The ALJ Adequately Developed the Record

Plaintiff's second argument, that the ALJ failed to fully and fairly develop the record, also fails. An ALJ has the duty to develop the record independent of the claimant's burden in the case. *Snead v. Barnhart,* 360 F.3d 834, 838 (8th Cir. 2004).

However, the burden of persuasion to prove disability and to demonstrate RFC remains on the claimant. *Id.* The plaintiff has not identified any inconsistencies that the ALJ was unable to resolve based on the record. *See* 20 C.F.R. §§ 404.1520b(b), 416.920b(b). Instead, the plaintiff argues that there was insufficient evidence, because there were no medical source opinions in the record. (Doc. No. 15 at 12-13). If there is insufficient evidence, the ALJ may request additional information, but "insufficiency" is a case-by-case determination and the action taken "depend[s] on the nature of the inconsistency or insufficiency." 20 C.F.R. § 416.920b(c).

The evidence of record here was sufficient for the ALJ to determine that plaintiff had not met the burden of proving disability. As detailed above, the ALJ thoroughly discussed the treatment record, two consultative examination reports, objective medical evidence, and plaintiff's statements. (Tr. 16-24). "In the absence of medical opinion evidence, medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings." *Hensley*, 829 F.3d at 932 (citations omitted). In this case, the ALJ looked to medical records opining that plaintiff was able to perform basic ambulation, had good grip and finger manipulation, and had good lower body strength. (Tr. 583, 612, 616-17, 709). Further, as the ALJ noted, no physicians placed any movement restrictions on plaintiff, but rather encouraged her to be more active. (Tr. 23, 587-88, 590, 592, 709).

Here, as in *Eichelberger*, "no crucial issue was left undeveloped; rather, [plaintiff] simply failed to show that she was unable to perform her past work." *Eichelberger v. Barnhart*, 390 F.3d 584, 591-92 (8th Cir. 2004). Plaintiff did not prove that the significant, sedentary limitations set out in the RFC would not address her impairments. Accordingly, it was not error for the ALJ to render a decision based on the record alone, without re-contacting plaintiff's treating physician or ordering a consultative examination.

**D.   The ALJ Properly Found Plaintiff Capable of Her PRW**

The ALJ determined that plaintiff was able to perform her past relevant work as a collections clerk, and that "this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 24). Plaintiff argues that these determinations are not supported by substantial evidence, because (1) the hypothetical questions to the VE were based on a faulty RFC determination, and (2) the ALJ failed to consider the side effects of plaintiff's medications. For the reasons discussed above, the ALJ's RFC determination was supported by substantial evidence, and the hypothetical questions based on that RFC were, accordingly, appropriate. Moreover, VE testimony is not required to determine a claimant is capable of performing her PRW at Step Four. *Lewis v. Barnhart,* 353 F.3d 642, 648 (8th Cir. 2003). Although not required to do so, the ALJ lawfully considered the VE testimony that plaintiff could perform her past PRW. *See Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014).

Plaintiff argues that the ALJ failed to adequately consider the drowsiness side effect caused by her medication that allegedly caused plaintiff to lose her job. (Doc. 15; Tr. 168-69). However, as discussed above, the ALJ considered evidence of plaintiff's side effects when determining her RFC, and he did not find that plaintiff's subjective complaints of drowsiness were supported by the medical evidence. It was inconsistent with plaintiff's own statements during the course of treatment, as well as observations that plaintiff was alert at doctors' appointments. (Tr. 514-18, 540, 587, 589, 591). Plaintiff did report excessive daytime sleepiness in 2014 and early 2015, but this was while plaintiff was still working, and well before she had the pain pump inserted. (Tr. 484, 489-90, 596). The ALJ concluded that plaintiff had worked with her medical conditions for many years and could continue doing so. (Tr. 23-24). Substantial evidence supports this determination.

The ALJ's determination that plaintiff could perform her past relevant work is supported by substantial evidence.

## VI.  CONCLUSION

For the reasons set forth above, the court concludes that the Commissioner's final decision that plaintiff was not disabled is supported by substantial evidence on the record as a whole.  Accordingly, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

   S/   David D. Noce   
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 13, 2017.